UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JOAO SAMBO, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| | ) | Civil Action No. 26-CV-10464-AK |
| v. | ) | |
| | ) | |
| DAVID T. WESLING, Acting Boston Field | ) | |
| Office Director, U.S. Immigration and | ) | |
| Customs Enforcement; ANTONE MONIZ, | ) | |
| Superintendent of Plymouth County | ) | |
| Correctional Facility; TODD LYONS, | ) | |
| Acting Director, U.S. Immigrations and | ) | |
| Customs Enforcement; and KRISTI NOEM, | ) | |
| U.S. Secretary of Homeland Security, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

MEMORANDUM AND ORDER ON
PETITIONER'S WRIT OF HABEAS CORPUS

**ANGEL KELLEY, D.J.**

Petitioner Joao Sambo filed an Amended Petition for Writ of Habeas Corpus [Dkt. 11] under 8 U.S.C. § 2241 against several officials of the United States ("Respondents"). Petitioner alleges that his ongoing detention in Plymouth County Correctional Facility violates the Immigration and Nationality Act and the Due Process Clause. For the following reasons, Petitioner's Petition for Writ of Habeas Corpus [Dkt. 11] is **GRANTED**.

**I.    BACKGROUND**

Petitioner is a citizen of Angola, with no criminal record, who has been in immigration detention since January 23, 2026. On or around December 28, 2022, Petitioner entered the United States without inspection at a time and place other than as designated by the Secretary of

1

the Department of Homeland Security ("DHS").  On that day, Petitioner was taken into DHS custody, but was released several days later, on January 5, 2023, with parole pursuant to 8 U.S.C. § 1182(d)(5) "due to detention capacity issues and time in custody constraints in the San Diego Sector." [Dkt. 12-1 at 4].  In conformity with his conditions of release, Petitioner reported to Immigration and Customs Enforcement ("ICE") office in Scarborough, Maine, for fingerprinting shortly after his release.  Petitioner's parole expired less than two months later, on February 28, 2023.  Since his 2023 release, Petitioner filed an application for asylum, obtained representation in his removal proceedings, received a valid work permit, and obtained a U.S. driver's license.

Petitioner was arrested by ICE in Maine around January 23, 2026.  Petitioner was not provided notice of or explanation for his arrest.  The only paperwork Petitioner received from ICE upon his detention was a form notifying him that he was a member of the class action Guerrero Orellana v. Moniz, No. 25-CV-12664-PBS, 2025 WL 2809996 (D. Mass. Dec. 19, 2025). [Dkt. 11-1].  Petitioner was subsequently brought to Plymouth County Correctional Facility and has been detained there since.  Since his detention, ICE has not set bond for Petitioner and he has been unable to obtain review of his custody by an Immigration Judge.

Petitioner initially filed a Habeas Petition on January 29, 2026. [Dkt. 1].  He filed his Amended Petition on February 13, 2026, which is presently before the Court. [Dkt. 11].

## II.    LEGAL STANDARD

Section 2241 confers jurisdiction on this Court to order the release of any person who is held in the custody of the United States in violation of the "laws . . . of the United States" or the United States Constitution. 28 U.S.C. § 2241(c).  The burden rests on the person in custody to prove his detention is unlawful. Espinoza v. Sabol, 558 F.3d 83, 89 (1st Cir. 2009) (citing Walker v. Johnston, 312 U.S. 275, 286 (1941)).

## III.    DISCUSSION

"[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001).  Respondents argue that Petitioner only has those rights conferred to him by statute because he is an applicant for admission. [Dkt. 12 at 15 (citing Dep't of Homeland Security v. Thuraissigiam, 591 U.S. 103 (2020)).  Contrary to Respondents' contentions, Thuraissigiam stands for the limited principle that those "at the threshold of initial entry" stand on a different footing for due process purposes than noncitizens "who have established connections in this country." 591 U.S. at 107.

Petitioner is not seeking "initial entry" into the United States.  He has lived in the United States under humanitarian parole since January 2023 and is in the midst of removal proceedings. As such, he has full due process rights. See Rincon v. Hyde, No. 25-CV-12633-BEM, 2025 WL 3122784, at *6-7 (D. Mass. Nov. 7, 2025) (noncitizen paroled under 8 U.S.C. § 1182(d)(5) has due process rights); Alves De Souza v. Moniz, No. 25-CV-13334-MJJ, Doc. No. 12 at 5 (D. Mass. Dec. 1, 2025) (same); Tenemasa-Lema v. Hyde, No. 25-CV-13029-BEM, 2025 WL 3280555, at *4 (D. Mass. Nov. 25, 2025) (same); Destino v. FCI Berlin, No. 1:25-CV-374-SE-AJ, 2025 WL 4010424, at *7 (D.N.H. Dec. 24, 2025) (same); Rodriguez-Acurio v. Almodovar, No. 2:25-CV-6065 (NJC), 2025 WL 3314420, at *26 (E.D.N.Y. Nov. 28, 2025) (same); Aviles-Mena v. Kaiser, No. 25-CV-06783-RFL, 2025 WL 2578215, at *5 (N.D. Cal. Sept. 5, 2025) (same).  These protections extend to deportation proceedings. Reno v. Flores, 507 U.S. 292, 306

3

(1993) ("It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings.").

To establish whether government conduct in the deportation process violates the Due Process Clause, courts apply the three-part balancing test established in Mathews v. Eldridge, 424 U.S. 319 (1976). See Hernandez-Lara v. Lyons, 10 F.4th 19, 27-28 (1st Cir. 2021) (applying Mathews to a noncitizen's detention). The three factors are: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335. This Court will take each factor in turn.

**A. Private Interest**

Freedom from imprisonment is "the most elemental of liberty interests," Hamdi v. Rumsfeld, 542 U.S. 507, 529 (2004), and "lies at the heart of the liberty that [the Due Process] Clause protects," Zadvydas, 533 U.S. at 690. For that reason, "civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." Addington v. Texas, 441 U.S. 418, 425 (1979).

Petitioner is facing significant deprivation. The government is currently detaining Petitioner in Plymouth County Correctional Facility. The government is in control of Petitioner's daily activities and is keeping him from his family, community, and daily activities. Accordingly, the first factor strongly favors Petitioner. See Hernandez-Lara, 10 F.4th at 30 (finding the first factor "weighs heavily" in a noncitizen detainee's favor).

4

**B.    Risk of Erroneous Deprivation**

The second factor focuses on the risk of erroneous deprivation of Petitioner's liberty interest, and the degree to which alternative procedures may ameliorate that risk. See Mathews, 424 U.S. at 335.  Due process protects against immigration detention where detention does not bear a "reasonable relation to the purpose for which the individual [was] committed." Zadvydas, 533 U.S. at 690-91 (quoting Jackson v. Indiana, 406 U.S. 715, 738 (1972)).  Here, Petitioner's release on humanitarian parole necessarily required a finding that he posed neither "a security risk nor a risk of absconding." 8 C.F.R. § 212.5(b).  There is no evidence in the record that the government reconsidered its prior determination that Petitioner poses no safety or flight risk.

The risk of erroneous deprivation is particularly high when, as is undisputed here, Petitioner received no meaningful procedural safeguards. See Rincon, 2025 WL 3122784, at *9; Destino, 2025 WL 4010424, at *13 ("[T]he risk of erroneous deprivation of [the petitioner's] liberty interest is significant because he has been denied any opportunity to be heard regarding his confinement."); Sorosh v. Wofford, No. 1:26-CV-00409 DAD SCR, 2026 WL 323058, at *4 (E.D. Cal. Feb. 6, 2026) ("The risk of erroneous deprivation is particularly high when, as is undisputed here, petitioner received no meaningful procedural safeguards.").  Respondent argues that Petitioner's detention is entirely at the government's discretion.  Such absolute discretion, without notice or reason, poses an undue risk of erroneous deprivation.  As a bond hearing provides minimal administrative burdens while protecting Petitioner's due process rights, there is an adequate substitute procedure to protect Petitioner's rights. Destino, 2025 WL 4010424, at *14.

Petitioner's humanitarian parole was revoked without any notice or opportunity to be heard.  Petitioner has not violated the conditions of his parole and there is no evidence in the

record that he is either a flight risk or a danger to the community.  Under such circumstances, the second factor "weighs heavily" in favor of relief. See Hernandez-Lara, 10 F.4th at 30.

### C.      Government Interest

As to the third factor, Respondents have not argued that the government has any interest in Petitioner's continued detention.  Although bond hearings necessitate some administrative burden, the cost of providing a bond hearing is minimal. Rincon, 2025 WL 3122784, at *9; Tenemasa-Lema, 2025 WL 3280555, at *10.  Further, the government's interest in detention is low where, as here, there is no evidence that Petitioner is a flight risk or a danger to the community. Tenemasa-Lema, 2025 WL 3280555, at *10-11.  Simply put, the government has very little interest in avoiding any opportunity for Petitioner to challenge his detention.

In sum, the Mathews factors weigh definitively in favor of relief, that Petitioner's detention without a bond hearing violates his due process rights, and that a bond hearing is an appropriate and minimally invasive additional procedure to ensure that right.  As Petitioner's detention is unconstitutional, the Court need not address the parties' statutory arguments.

## IV.      CONCLUSION

For the foregoing reasons, Petitioner's Petition for Writ of Habeas Corpus [Dkt. 11] is **GRANTED**.  Respondents are **ORDERED** to provide Petitioner with a bond hearing. Respondents are **ENJOINED** from denying Petitioner bond on the basis that he is detained pursuant to 8 U.S.C. § 1225(b)(1).  If the bond hearing is not held within 7 days, Petitioner is ordered released.  The parties shall submit a status report within 10 days of this order.

**SO ORDERED.**

Dated: March 23, 2026                                  /s/ Angel Kelley
                                                       Hon. Angel Kelley
                                                       United States District Judge

6